

FILED

APR 23 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

DAVID WILLIAM BARTENWERFER and
KATE MARIE BARTENWERFER,

        Debtors.

KIERAN BUCKLEY,

        Appellant/Cross-Appellee,

v.

DAVID WILLIAM BARTENWERFER;
KATE MARIE BARTENWERFER,

        Appellees/Cross-Appellants.

BAP No.  NC-19-1016-TaFB
          NC-19-1025-TaFB
          (Cross Appeals)

Bk. No. 3:13-bk-30827

Adv. No. 3:13-ap-03185

MEMORANDUM*

Argued and Submitted on March 26, 2020

Filed – April 23, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

---

   * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

—————

Appearances:    Janet Marie Brayer argued on behalf of appellant/cross-appellee; Iain A. Macdonald of Macdonald Fernandez LLP argued on behalf of appellees/cross-appellants.

—————

Before: TAYLOR, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

In earlier cross-appeals,[1] we reviewed the bankruptcy court's judgment determining that the debt from a state court judgment owed to Kieran Buckley was excepted from the discharge of David and Kate Bartenwerfer ("Debtors") under § 523(a)(2)(A).[2] While we affirmed the exception to Mr. Bartenwerfer's discharge, we vacated the portion of the judgment excepting the debt from Mrs. Bartenwerfer's discharge because the bankruptcy court imputed Mr. Bartenwerfer's fraud to her for purposes of § 523(a)(2)(A) without finding that she "knew or had reason to know" of his fraud, as required by *Sachan v. Huh (In re Huh)*, 506 B.R. 257 (9th Cir. BAP 2014) (en banc). We remanded for findings in that regard.

On remand, the bankruptcy court found that Mrs. Bartenwerfer did

---

[1] BAP Nos. NC-16-1277-BJuF and NC-16-1299-BJuF.

[2] Unless specified otherwise, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

not "know or have reason to know" of her husband's fraud, and, thus, it could not impute his fraudulent intent to her. And it declined to address Mr. Buckley's alternative theory of her direct liability for fraud. It entered judgment in favor of Mrs. Bartenwerfer.

Both sides appealed. Mr. Buckley requests reversal. He argues that the bankruptcy court erred by interpreting our mandate as precluding it from considering Mrs. Bartenwerfer's direct liability, by declining to enter judgment against Mrs. Bartenwerfer on imputed and direct liability bases, and in its conduct of the trial. We only agree insofar as we hold that our mandate did not preclude the bankruptcy court from deciding whether she was directly liable for fraud. Nevertheless, we AFFIRM because the bankruptcy court's findings sufficiently support the judgment.[3]

## FACTS

### A. Prepetition Events

Prepetition, Debtors purchased a home in San Francisco, California ("Property") to remodel and sell at a profit. They lived elsewhere during the remodel. Unemployed, Mr. Bartenwerfer assumed full responsibility for managing the remodel and supervising the contractors and subcontractors. And he did so even though he lacked construction experience or a contractor's license.

---

[3] Debtors cross-appealed, arguing that the bankruptcy court abused its discretion in reopening the record. Because we affirm, we do not consider the cross-appeal.

3

After the remodel, Debtors sold the Property to Mr. Buckley. In connection with the sale, they signed a Cal. Civ. Code § 1102 *et seq.* transfer disclosure statement and a supplement thereto (collectively, the "TDS"), that purported to detail the Property's physical condition. The TDS, however, contained false representations regarding, *inter alia,* water leaks, defective window conditions, open permit issues, and fire escape non-compliance ("Defects").

Mr. Buckley discovered the Defects after the sale. Thus, he sued Debtors in state court on various theories including intentional fraud or deceit and willful failure to disclose information in the TDS.

After a 19-day trial, the jury found in Mr. Buckley's favor on his failure to disclose claims and others that facially would not support a nondischargeability claim. As to the failure to disclose determination, the jury found: (1) Debtors did not disclose information that they "knew or reasonably should have known" about the Defects; (2) Mr. Buckley did not know and could not have reasonably discovered the Defects; (3) Debtors knew or reasonably should have known that he did not know and could not have reasonably discovered the Defects; (4) the Defects affected the Property's value; (5) Mr. Buckley was harmed; and (6) Debtors' failure to disclose the Defects was a substantial factor in causing his harm.

The jury awarded Mr. Buckley damages for, *inter alia*, nondisclosure of the Defects but awarded him $0 for "intentional fraud" and no punitive

4

damages. The state court entered judgment accordingly.

## B. The Adversary Complaint and Pretrial Motions

Then Debtors filed their chapter 7 bankruptcy, and Mr. Buckley filed a § 523(a)(2)(A) adversary complaint to except from their discharge the debt owed to him under the state court judgment. Mr. Buckley alleged that Debtors knowingly failed to disclose information that they knew was material to him with the intent to induce him to purchase the Property in reliance on the nondisclosures. He alleged that he justifiably relied on the nondisclosures and suffered damages as found by the jury.

Mr. Buckley and Debtors filed cross-motions for summary judgment, each arguing that the doctrine of issue preclusion entitled them to judgment as a matter of law. The bankruptcy court denied the motions because it could not determine from the record whether a finding of actual fraud was necessary to the state court judgment—the jury could have found Debtors liable on Mr. Buckley's failure to disclose claim on the basis of actual fraud *or* something requiring a lower scienter standard.

## C. The Adversary Trial

The bankruptcy court held a two-day trial to determine the sole disputed issue of whether Debtors fraudulently failed to disclose the Defects to Mr. Buckley ("Trial").

Once Mr. Buckley rested his case-in-chief, Debtors moved for judgment on partial findings under Civil Rule 52(c) as to

Mrs. Bartenwerfer. They asserted that there was no evidence that she knew of the Defects and intentionally failed to disclose them or that she knew anything represented in the TDS was false. In the absence of such evidence, they posited that Mr. Buckley was relying on an agency theory in which she could nevertheless be held vicariously liable for the fraud of her agent, Mr. Bartenwerfer. But they contended that she could not be held so liable, arguing that Mr. Buckley failed to prove: (1) the existence of an agency relationship; and (2) any culpable conduct by Mrs. Bartenwerfer.

The bankruptcy court denied Debtors' motion on the sole basis that there was an agency relationship between Debtors arising from their partnership in the remodel project.

**D. The Judgment I**

After the Trial, the bankruptcy court entered its memorandum decision, *Buckley v. Bartenwerfer (In re Bartenwerfer)*, 549 B.R. 222 (Bankr. N.D. Cal. 2016) ("*Bartenwerfer I*"), finding in favor of Mr. Buckley and against Debtors on Mr. Buckley's § 523(a)(2)(A) claim.

It found that Debtors had the requisite knowledge and intent to deceive Mr. Buckley by failing to disclose the Defects in the TDS. *Id.* at 229. It issued extensive findings regarding Mr. Bartenwerfer's actual knowledge of the falsity of the TDS representations and his lack of credibility. *Id.* at 229-32. But it did not do the same with regard to Mrs. Bartenwerfer. It simply: (1) observed in a footnote that Mr. Bartenwerfer's fraudulent

6

conduct could be imputed to her based on Debtors' partnership in the remodel project; and (2) found that the misrepresentations belong to her because she signed the TDS. *Id.* at 225 n.3 & 227.

Accordingly, the bankruptcy court entered a judgment in favor of Mr. Buckley and against Debtors. It later amended the amount of the judgment to add attorneys' fees and interest ("Judgment I").

**E. The First Cross-Appeals**

Cross-appeals followed.[4] We affirmed the Judgment I as to Mr. Bartenwerfer because there was ample evidence in the record that he knowingly and intentionally concealed the Defects from Mr. Buckley. *Bartenwerfer v. Buckley (In re Bartenwerfer)*, BAP Nos. NC-16-1277-BJuF, NC-16-1299-BJuF, 2017 WL 6553392, at *10 (9th Cir. BAP Dec. 22, 2017) ("*Bartenwerfer II*"). However, as to Mrs. Bartenwerfer, while we agreed with the bankruptcy court's agency finding, we concluded that it erred by imputing Mr. Bartenwerfer's fraudulent intent to her on the sole basis of agency. *Id.* at *9. Therefore, we vacated Judgment I, in part, and remanded for further findings, as follows:

> To deny Mrs. Bartenwerfer's Civil Rule 52(c) motion, the court had to also find that she "knew or had reason to know" of Mr. Bartenwerfer's fraudulent omissions. *Sachan v. Huh (In re Huh)*, 506 B.R. 257, 271–72 (9th Cir. BAP 2014) (en banc). The

---

[4] The attorneys' fees and interest included in the Judgment I were part of these cross-appeals but are not at issue in the current cross-appeals.

court made no such finding. Accordingly, we REMAND this issue for further findings as to Mrs. Bartenwerfer's actual knowledge.

In addition, because the bankruptcy court appears to have imposed judgment against Mrs. Bartenwerfer solely on the basis of her agency relationship with Mr. Bartenwerfer, we VACATE the portion of the Second Amended 523 Judgment determining that Buckley's debt was nondischargeable under § 523(a)(2)(A) as to Mrs. Bartenwerfer.

*Id.* at *10.

**F. The Hearing on Remand**

On remand,[5] the bankruptcy court reopened the record and held an evidentiary hearing to determine Mrs. Bartenwerfer's knowledge of the fraud ("Hearing"). During the Hearing, Mr. Buckley extensively examined Mrs. Bartenwerfer, which did nothing for his case. She testified repeatedly that Debtors treated the remodel as Mr. Bartenwerfer's job while she worked elsewhere. Consequently, she testified, she was absent from the Property, did not engage the professionals handling the remodel, was unaware of the day-to-day activities at the Property, and was not involved in obtaining permits. She testified she lacked access to, or knowledge of, sources of information concerning the remodel, including where or how to access the budget, plans, permits, and other documents for the remodel.

---

[5] Before we issued our mandate, both parties appealed to the Ninth Circuit. *See* Nos. 18-60001 and 18-60007. They voluntarily dismissed these appeals.

She also testified that she played a minimal role in preparing the TDS; she merely verified whatever information she could by visually inspecting the Property and relied on her husband to confirm the accuracy of everything else disclosed in the TDS. She acknowledged that she did not take any steps to confirm what he told her but also testified that she had no reason to question what he said.

**G. The Judgment II**

After the Hearing, the bankruptcy court issued a memorandum decision, *Buckley v. Bartenwerfer (In re Bartenwerfer)*, 596 B.R. 675 (Bankr. N.D. Cal. 2019) ("*Bartenwerfer III*"). Therein, it defined the remand issue as "limited to whether Mrs. Bartenwerfer knew or should have known of her husband's fraud, such that it can be imputed to her for purposes of section 523(a)(2)(A)." *Id*. at 682. After noting that the parties "no longer seriously dispute[d] that Mrs. Bartenwerfer had no actual knowledge of Mr. Bartenwerfer's fraud," it addressed what it characterized as the only remaining dispute on remand: "whether she 'should have known' of his fraud." *Id*. at 681.

Addressing this issue, it found that Mr. Buckley failed to prove that Mrs. Bartenwerfer knew of but ignored any facts that would require investigation into Mr. Bartenwerfer's conduct, and it concluded that Mr. Bartenwerfer's fraud could not be imputed to her. *Id*. at 686.

It declined to address arguments that it perceived as beyond the

scope of the remanded issue, including Mr. Buckley's argument that Mrs. Bartenwerfer could be held directly liable for the misrepresentations.

On January 7, 2019, the bankruptcy court entered judgment in favor of Mrs. Bartenwerfer and against Mr. Buckley ("Judgment II"). These timely cross-appeals followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by not imputing Mr. Bartenwerfer's fraud to Mrs. Bartenwerfer for purposes of § 523(a)(2)(A)?

Did the bankruptcy court abuse its discretion by not ruling on whether Mrs. Bartenwerfer was directly liable for fraud for purposes of § 523(a)(2)(A)?

Did the bankruptcy court abuse its discretion in its conduct of the Hearing?

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views

of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). When factual findings are based on credibility determinations, we must give even greater deference to the bankruptcy court's findings. *Id.* at 575.

We review the bankruptcy court's evidentiary rulings for an abuse of discretion. *See Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1452 (9th Cir. 1997). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We review de novo whether the bankruptcy court complied with our mandate on remand. *de Jong v. JLE-04 Parker, L.L.C. (In re de Jong)*, 588 B.R. 879, 888 (9th Cir. BAP 2018), *aff'd*, 793 F. App'x 659 (9th Cir. 2020). We review the bankruptcy court's decision to consider an issue on remand that the mandate does not foreclose for an abuse of discretion. *Id*.

We may affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## DISCUSSION

### A. The bankruptcy court did not err in its determination that Mr. Bartenwerfer's fraud cannot be imputed to Mrs. Bartenwerfer.

Mr. Buckley contends that the bankruptcy court erred by failing to impute Mr. Bartenwerfer's fraud to Mrs. Bartenwerfer for purposes of

11

§ 523(a)(2)(A). We disagree; the bankruptcy court identified and appropriately applied the applicable legal standard in *Bartenwerfer III*.

The bankruptcy court correctly indicated that *In re Huh*, 506 B.R. at 266 adopted the rule announced in *Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452 (8th Cir. 1984), for determining whether to impute liability, as follows: "imputation of an agent's fraud to the agent's principal requires proof of the principal's culpability, i.e., that the principal knew or should have known of the agent's fraud." *Bartenwerfer III*, 596 B.R. at 683. As *Huh* does not set forth efforts Mrs. Bartenwerfer *must* have taken to avoid a finding that she "should have known" of her agent's fraud, the bankruptcy court appropriately consulted cases where courts imputed liability under the *Huh* and *Walker* "should have known" rule for guidance in determining if she "should have known" of Mr. Bartenwerfer's fraud. It noted commonalities among these cases: "[i]n each of the foregoing cases, the debtor knew of—but ignored—facts and circumstances that should have prompted him to investigate the truth of representations made by his agent" and "the debtor's willful refusal to pay minimal attention to the activities of their agents amounted to reckless indifference." *Id.* at 685.

The bankruptcy court then distinguished these cases, finding Mrs. Bartenwerfer's conduct reasonable with respect to the representations made in the TDS. *Id.* at 686. Specifically, it found that she credibly testified that she visually confirmed whatever information she could and asked

12

Mr. Bartenwerfer to confirm the veracity of the other disclosures. *Id.* at 679. It found that her reliance on his knowledge to make the disclosures was neither reckless nor unreasonable given that it was his full-time job to supervise the construction in her physical absence. *Id.* at 686.

We find no error in the bankruptcy court's findings, especially in light of the special deference we must give its credibility determinations. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

**B. The bankruptcy court did not commit reversible error by declining to rule on whether Mrs. Bartenwerfer was directly liable for fraud.**

Mr. Buckley also contends that the bankruptcy court erred by failing to hold Mrs. Bartenwerfer directly liable for fraud. He argues she can be held directly liable because she allegedly showed reckless indifference to the facts that she represented in the TDS. To demonstrate her reckless indifference, he claims that she failed to examine sources of knowledge that lay at her hand and that she signed the TDS certifying that the representations were true and correct to the best of her knowledge with no reasonable ground to believe that they were true. And Mr. Buckley contends, in the alternative, that the bankruptcy court could have held her directly liable for fraud under California common law, statutory law, and contractual law imposing a duty to disclose.

When confronted with such arguments, the bankruptcy court simply stated: "[t]he court respectfully declines to address arguments beyond the

Remanded Issue. The BAP did not invite the parties to offer or this court to consider new theories relating to Mrs. Bartenwerfer's knowledge or intent." *Bartenwerfer III*, 596 B.R. at 682. Accordingly, as a threshold issue, we must address whether the bankruptcy court had the discretion to determine whether Mrs. Bartenwerfer was directly liable for fraud and, if so, whether it was obliged to do so. This requires us to first consider the extent to which our mandate was binding on the bankruptcy court.

**1. Our mandate did not preclude the bankruptcy court from deciding whether Mrs. Bartenwerfer was directly liable for fraud.**

Under the "rule of mandate," on remand, a trial court cannot vary or examine the appellate court's mandate for any purpose other than executing it. *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016). It "commits 'jurisdictional error' if it takes actions that contradict the mandate." *Id*. But the rule of mandate does not preclude a trial court from deciding anything not foreclosed by the mandate. *Id.* "[A]ny issue not expressly or impliedly disposed of on appeal is available for consideration by the trial court on remand." *Id.* (internal quotation marks and citation omitted).

We remanded for the bankruptcy court to issue further findings regarding Mrs. Bartenwerfer's intent, *and* we vacated Judgment I, because the bankruptcy court appeared to have denied her Civil Rule 52(c) motion *and* found her liable for fraud on the sole basis of the existence of an agency relationship between Debtors without examining whether she "knew or

14

should have known" of Mr. Bartenwerfer's fraud. *See Bartenwerfer II*, 2017 WL 6553392, at \*10. Neither of the parties argued, nor did we conclude, that the bankruptcy court ruled on whether Mrs. Bartenwerfer could be held directly liable for fraud. Therefore, we did not expressly or impliedly dispose of the issue in *Bartenwerfer II.* Thus, it was available for consideration by the bankruptcy court on remand so long as Mr. Buckley had not waived the issue. We conclude that he did not.

**2. Mr. Buckley did not waive the issue of Mrs. Bartenwerfer's direct liability for fraud.**

Mr. Buckley did not limit his theory of Mrs. Bartenwerfer's liability to imputed liability in his complaint and trial brief. Neither document even mentions imputed liability. While Debtors posited during the Trial that he was relying on an agency theory to establish her liability, he argued that he needed to prove either that she knew or should have known of Mr. Bartenwerfer's fraud *or* that "she was recklessly indifferent" to the facts. Despite this, as discussed *supra*, the bankruptcy court appeared to have imposed the initial judgment against Mrs. Bartenwerfer solely on the basis of Debtors' agency relationship.

This brings us to the first cross-appeals. In his appellate briefing, Mr. Buckley defended the bankruptcy court's Judgment I and denial of Debtors' Civil Rule 52(c) motion without arguing that the bankruptcy court could have, and should have, alternatively found Mrs. Bartenwerfer

directly liable for fraud. *See* BAP No. NC-16-1277-BJuF, ECF No. 19. Neither did he include the issue in his cross-appeal of the Judgment I. *Id.* He could have done so. *See St. John v. United States*, 951 F.2d 232, 233 n.1 (9th Cir. 1991). But he was not required to do so to preserve his argument in this appeal. *See In re de Jong*, 588 B.R. at 892.

**3. The bankruptcy court abused its discretion in declining to rule on Mrs. Bartenwerfer's direct liability for fraud, but the error is harmless.**

As Mr. Buckley preserved the issue of Mrs. Bartenwerfer's direct liability for fraud and the issue was never addressed by the bankruptcy court or on appeal, the bankruptcy court was incorrect in its conclusion that it could not and need not decide the issue. Thus, it misapprehended its powers and applied an incorrect legal standard on remand.

But we need not vacate Judgment II and remand for additional findings regarding Mrs. Bartenwerfer's intent because Judgment II is sufficiently supported by the record. *See Shanks*, 540 F.3d at 1086. While Mr. Buckley asserts that Mrs. Bartenwerfer failed to examine accessible sources of knowledge, knew that the status of the permits as disclosed on the TDS was inaccurate, and knew of other defects not disclosed on the TDS, the evidence at Trial indicated that she did not have such access or knowledge of such facts. The bankruptcy court found that she consistently and credibly testified that she verified what she could in the TDS and relied on Mr. Bartenwerfer to confirm anything that she did not know in

16

completing the TDS. It found that her conduct was reasonable "and certainly not reckless" with respect to the representations made in the TDS, notwithstanding any specialized knowledge she may have had regarding TDS documents at the time as a real estate broker. These findings are inconsistent with Mr. Buckley's theory of Mrs. Bartenwerfer's direct liability for fraud. Her actions and attitude toward the truth were simply not found to be "reckless" or "indifferent," but reasonable. And the record supports the bankruptcy court's view of the evidence as set forth in its findings.

Accordingly, we affirm the bankruptcy court's conclusion that Mrs. Bartenwerfer is not liable for fraud for purposes of § 523(a)(2)(A). We do so notwithstanding Mr. Buckley's objections to the bankruptcy court's conduct of the Hearing, which we will now address.

**C. The bankruptcy court did not abuse its discretion in denying Mr. Buckley rebuttal time.**

By way of background, *at the parties' suggestion*, the bankruptcy court ordered the remanded issue of Mrs. Bartenwerfer's knowledge to be addressed through briefing. Mr. Buckley then changed his mind and requested that the bankruptcy court reopen the record should it find the record lacking as to her knowledge. The bankruptcy court entered an order ("Scheduling Order") reopening the record for the limited evidentiary hearing on Mrs. Bartenwerfer's knowledge.

The Scheduling Order provided that each side would be limited to 90 minutes of time on the record and could only introduce new exhibits (that were not already admitted during the Trial) if solely for impeachment or rebuttal. At a status conference before the Hearing, the bankruptcy court reiterated these time and exhibit limitations and explained that Mr. Buckley could reserve part of his 90 minutes for rebuttal. Mr. Buckley's counsel agreed that 90 minutes would be adequate.

Despite the narrow scope of the Hearing and the bankruptcy court's clear instructions regarding its time and exhibit limitations, Mr. Buckley attempted to present extraneous evidence for purposes other than impeachment or rebuttal and to consume more time than he was allotted. Rather than save any time for rebuttal as explicitly authorized by the bankruptcy court, he consumed his entire 90 minutes, plus an additional five minute extension, in his case-in-chief. Now he complains that the bankruptcy court should have allowed him even more time to rebut Mrs. Bartenwerfer's cross-examination testimony because she allegedly provided "false testimony" during cross-examination pertaining to whether she was on title to the Property and received proceeds from the sale of the Property.

Courts have broad discretion to impose time. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001). The bankruptcy court in this case did not abuse its discretion. Mr. Buckley had no time for rebuttal due to his poor

time management during the Hearing and not by fault of the bankruptcy court. And if any of Mrs. Bartenwerfer's testimony was indeed false, the bankruptcy court apparently did not rely on such evidence in reaching its decision, as such evidence was relevant only to the resolved issue of Debtors' agency relationship. *See Bartenwerfer III*, 596 B.R. at 682.

**D. The bankruptcy court appropriately limited the introduction of additional evidence for impeachment and rebuttal purposes.**

Mr. Buckley further complains that the bankruptcy court improperly prohibited him from refreshing Mrs. Bartenwerfer's recollection with a writing as permitted by Fed. R. Evid. 612. We disagree; the bankruptcy court merely limited the universe of exhibits to those admitted during the Trial and any additional exhibits to the extent used for impeachment and rebuttal purposes. Mr. Buckley was free to impeach Mrs. Bartenwerfer with her prior testimony or the exhibits admitted during the Trial, at which he had a full opportunity to prove his case against her.

**E. The bankruptcy court appropriately weighed discovery responses.**

At the Hearing, Mrs. Bartenwerfer testified that she was unaware of the Defects. Mr. Buckley attempted to impeach her testimony by confronting her with her contradictory interrogatory responses, executed under penalty of perjury as true of her own knowledge. The bankruptcy court addressed the conflict between her testimony and discovery responses, as follows:

> She claimed that she intended her responses—which were clearly drafted as hers and hers alone—to be interpreted as both hers and Mr. Bartenwerfer's. This feeble explanation does nothing for her credibility.
>
> All of that said, the court believes that Mrs. Bartenwerfer told the truth on the stand.

*Id.* at 681.

Mr. Buckley asserts that the bankruptcy court was obliged to accept her discovery responses over her testimony for two reasons. First, he argues that her testimony is akin to a self-serving declaration contrary to prior sworn testimony that is proffered in an attempt to defeat a summary judgment motion in violation of the "sham affidavit" doctrine. *See Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) ("When confronted with the question of whether a party should be allowed to create his own issue of fact by an affidavit contradicting his prior deposition testimony . . . [the purported issues of fact created by a plaintiff's contradictory declaration] are sham issues which should not subject the defendants to the burden of a trial."). But this is not a summary judgment case. Mr. Buckley has failed to cite authority holding that the "sham affidavit" doctrine compels a trial court to reject a witness's trial testimony in the face of contradictory discovery responses.

Even if the doctrine applied, an affidavit is not considered a "sham" if: (1) it merely elaborates, explains, or clarifies prior testimony; or (2) the

witness was confused when giving the prior testimony and is providing an explanation for the confusion. *See Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995); *Pac. Ins. Co. v. Kent*, 120 F. Supp. 2d 1205, 1213 (C.D. Cal. 2000).

Next, citing to Civil Rules 26(e) and 37(c)(1), Mr. Buckley argued in his reply brief and at oral argument that the bankruptcy court should not have considered Mrs. Bartenwerfer's testimony because it improperly modified her discovery responses. He waived this argument by failing to object to her testimony during the Hearing and by failing to include this argument in his opening brief. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

We conclude that the bankruptcy court admitted and gave due consideration of the discovery responses and it did not abuse its discretion in believing Mrs. Bartenwerfer's testimony over the responses.

**F. The bankruptcy court appropriately limited the evidence to the issues.**[6]

Nor did it abuse its discretion in deeming inadmissible documents about Mrs. Bartenwerfer's marketing of real estate other than the Property. Mr. Buckley failed to explain why the documents were relevant to her knowledge regarding the TDS misrepresentations. He submitted that the

---

[6] Debtors moved to strike portions of Mr. Buckley's excerpts of record on the ground that certain documents were not part of the record below. We grant the motion to the extent unopposed. To the extent opposed, we consider the documents for the purpose of deciding whether the bankruptcy court erred in deeming them inadmissible.

documents showed that she was involved in the business of "flipping" properties. While this may have been relevant to the issue of whether an agency relationship existed between Debtors, that was a non-issue at the time of the Hearing.

Even if the bankruptcy court erred in deeming the documents inadmissible, there is no indication that the evidentiary exclusion, or the bankruptcy court's other evidentiary rulings, prejudiced Mr. Buckley's case. The best indication of Mrs. Bartenwerfer's intent was her live testimony and the bankruptcy court's contemporaneous assessment of her credibility. Nothing in the excluded evidence was likely to have altered its finding regarding her intent. Thus we discern no reversible error.

## CONCLUSION

Based on the foregoing, we AFFIRM.